This is an appeal from the judgment of the Lawrence County Court of Common Pleas, Probate-Juvenile Division, which awarded permanent custody of Austin Kincaid, an alleged dependent child, to the Lawrence County Department of Human Services ("LCDHS"). Appellant Betina Kincaid, Austin's mother, argues that the trial court lacked jurisdiction to make an award of permanent custody because Austin's father was never notified of this action. Appellant also argues that the trial court's judgment was against the manifest weight of the evidence. We reverse the judgment of the trial court.
 STATEMENT OF FACTS
The roots of this case date back to 1996, when Appellant gave birth to Austin. At that time, Appellant was still a minor and she had been in and out of the custody of LCDHS for some time. On August 1, 1996, LCDHS filed a complaint alleging that Austin was a dependent child. Appellant ultimately admitted to the allegations in the August 1, 1996 complaint. Pursuant to a court order, Austin was placed with Terry Winters, Appellant's aunt, who lived in Pennsylvania.
During the summer of 1998, Ms. Winters contacted LCDHS and requested that Austin be placed back with Appellant. While the reason for this request is not entirely clear from the record, it appears that Ms. Winters was concerned about developing an emotional attachment to Austin when she was only caring for him on a temporary basis. She proposed to give Appellant another chance to raise Austin. If Appellant proved to be a fit parent, then she should regain full custody of her son. If Appellant proved to be an unfit parent, however, Ms. Winters stated that she was prepared to adopt Austin.
Pursuant to Ms. Winters' request, LCDHS filed a complaint on August 31, 1998, seeking temporary custody of Austin. The complaint alleged that Austin was a dependent child because Appellant had failed to demonstrate proper parenting skill. The trial court held a hearing on the dependency complaint on October 30, 1998, at which Appellant admitted to the allegations in the complaint. On November 2, 1998, the trial court filed a judgment entry ordering Austin to be placed in the temporary custody of LCDHS.
On November 30, 1998, LCDHS filed a case plan establishing goals for Appellant to achieve before she could regain full custody of Austin. The case plan called for Appellant to obtain her General Education Diploma ("GED"), maintain gainful employment, find and maintain suitable housing, and seek counseling for drug abuse and behavioral problems. The case plan was amended a number of times to give Appellant more time to comply with the goals of the plan. Subsequent plans expressed concern that Appellant had no established support system to assist her with rearing Austin.
Austin and Appellant, who was still a minor, were placed together in the foster home of Bill and Dot Robinson. The idea behind this arrangement was to provide Appellant with the opportunity to develop proper parenting skills in a structured environment. The Robinsons were foster parents for both Austin and Appellant, but Appellant was charged with primary responsibility for Austin's care while she was living with the Robinsons.
Initially, Appellant made progress toward achieving the goals of the LCDHS case plan. Appellant obtained a job, and she had arranged to move into her own apartment on her eighteenth birthday, February 12, 1999. The apartment was near the Robinsons' home, and it was expected that Appellant would gradually assume complete responsibility for Austin's care. The Robinsons had agreed to assist Appellant while she made the transition from living with a foster family to rearing Austin on her own.
Approximately two weeks before her eighteenth birthday, Appellant left the Robinsons' home and began living with her boyfriend, Scott Zimmerman. Appellant left Austin behind, and the Robinsons assumed full-time responsibility for his care. Appellant subsequently lost her job, as well as the apartment she had intended to rent.
On June 17, 1999, LCDHS filed a motion requesting that the trial court grant the agency permanent custody of Austin, and divest Appellant of all parental rights and responsibilities. The motion alleged that Appellant had failed to place "the interest of Austin first and foremost in her life," and that it was in Austin's best interest to award LCDHS permanent custody of him.
On December 28, 1999, the trial court held a hearing on LCDHS's motion for permanent custody of Austin. At the hearing, LCDHS presented testimony that, while Appellant loved Austin very much, she had failed to take steps under the LCDHS case plan to prove that she was capable of properly caring for him. Since leaving the Robinsons' home, Appellant had neither held a job, nor obtained her GED. In fact, she had stopped attending classes to prepare for the GED exam. Appellant failed to keep several appointments for a mental health assessment to determine whether she was in need of additional assistance or counseling. There was also testimony that Appellant visited Austin only sporadically, and that she often missed visitation appointments for several weeks at a time. Finally, LCDHS objected to appellant living with Zimmerman, alleging that he was abusive and had a juvenile criminal record.
In response, Appellant claimed that she had substantially complied with the major provisions of the LCDHS case plan. A few weeks before the hearing, Appellant obtained an apartment, which LCDHS conceded was suitable housing for Appellant and Austin. Appellant admitted that she had not held a job or obtained her GED. However, she was receiving Supplemental Security Income ("SSI") benefits, which provided sufficient income to pay her rent and living expenses. In addition, she had completed courses on parenting skills, anger management, and domestic violence.
On January 3, 2000, Patricia Grubbs, Austin's guardian ad litem, filed her report with the trial court. Grubbs recommended that the trial court grant LCDHS permanent custody of Austin, based largely on the fact that Appellant had so often failed to keep visitation appointments. Grubbs acknowledged that Appellant had obtained a suitable apartment and that she was receiving SSI benefits. However, Grubbs concluded that Appellant's consistent failure to maintain contact with Austin indicated that she was incapable of providing the long-term stability that Austin needed.
On January 19, 2000, the trial court filed its judgment entry awarding permanent custody of Austin to LCDHS, thereby divesting Appellant of all of her parental rights and responsibilities. The court found that it was in Austin's best interest for LCDHS to assume permanent custody, and that Austin could not be placed with Appellant within a reasonable period of time. The court based its decision on the fact that Appellant had consistently failed to demonstrate a commitment to rearing Austin. The court noted that any action Appellant had taken to comply with the case plan primarily benefited her and not Austin.
Appellant filed a timely notice of appeal of the trial court's judgment. Appellant presents two assignments of error for our review.
 I. THE TRIAL COURT LACKED JURISDICTION TO AWARD PERMANENT CUSTODY OF THE DEPENDENT CHILD TO THE DEPARTMENT OF HUMAN SERVICES IN THE ABSENCE OF ANY ATTEMPT TO ASCERTAIN THE FATHER OF THE CHILD, TO SERVE THE FATHER, TO PROVIDE NOTICE TO THE FATHER OF THE DEPENDENCY ACTION OR OF THE MOTION FOR PERMANENT CUSTODY.
 II. THE TRIAL COURT'S AWARD OF PERMANENT CUSTODY TO THE LAWRENCE COUNTY DEPARTMENT OF HUMAN SERVICES OF AUSTIN KINCAID WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONSTITUTED AN ABUSE OF DISCRETION.
 OPINION I.
In her First Assignment of Error, Appellant argues that the trial court lacked jurisdiction to award permanent custody of Austin to LCDHS. The record indicates that LCDHS made no attempt to notify Austin's father of either the original dependency complaint or the agency's request for permanent custody of Austin. Appellant argues that the lack of notice to Austin's father divested the trial court of subject matter jurisdiction to decide LCDHS's motion for permanent custody. Therefore, Appellant contends that the trial court's judgment entry is void.
In response, LCDHS argues that Appellant has no standing to object to the failure to notify Austin's father, because she was not prejudiced by the father's absence from the permanent custody proceedings. Also, LCDHS notes that the state cannot serve the father if his identity is unknown. Appellant has never identified the father, so she cannot fault LCDHS for failing to ascertain his identity. Finally, LCDHS argues that Appellant did not object to the absence of the father in the trial court, so she cannot raise it for the first time on appeal.
In permanent custody proceedings, R.C. 2151.414 requires the court to schedule a hearing and notify all parties to the action "of the filing of the motion [requesting permanent custody] and of the hearing, in accordance with section 2151.29 of the Revised Code." R.C. 2151.414(A). We have previously held that a juvenile court does not have jurisdiction to award permanent custody of a child "unless there is notice to a parent whose address is known." In re Stackhouse (Mar. 11, 1991), Athens App. No. 1456, unreported, citing Reynolds v. Ross Cty. Children's ServicesAgency (Oct. 12, 1979), Ross App. No. 704, unreported.
The Sixth District Court of Appeals has criticized Stackhouse, noting that it appears to hold that the lack of notice under R.C. 2151.414(A) deprives the juvenile court of subject matter jurisdiction in permanent custody proceedings. See In re Ciara B. (July 2, 1998), Lucas App. No. L-97-1264, unreported. The Ciara B. court determined that juvenile courts have exclusive jurisdiction in permanent custody proceedings under R.C.2151.23(A)(1). The notice requirement of R.C. 2151.414(A) merely ensures that the juvenile court has personal jurisdiction over the parents.
We agree with the reasoning of Ciara B., and we hold that the notice requirement of R.C. 2151.414(A) involves the juvenile court's personal jurisdiction over the parents, not its subject matter jurisdiction to decide a motion for permanent custody. We hereby overrule Stackhouse andReynolds to the extent that those cases held that the failure to notify both parents of permanent custody proceedings deprived the juvenile court of subject matter jurisdiction.
The record indicates that there was never any attempt to serve Austin's father with notice of the permanent custody proceedings. Thus, the trial court did not have personal jurisdiction over the father. However, a party may waive personal jurisdiction. See Civ.R. 12(H). Appellant received proper notice of the permanent custody hearing, and there is no evidence that her defense was prejudiced by the absence of Austin's father from the proceedings. See Ciara B., citing In re Rackley (Apr. 8, 1998), Summit App. No. 18614, unreported; In re Young (Feb. 5, 1996), Stark App. No. 95-CA-0180, unreported. Thus, we find that appellant does not have standing to raise the issue of the trial court's personal jurisdiction over the father.
Accordingly, Appellant's First Assignment of Error is OVERRULED.
 II.
In her Second Assignment of Error, Appellant argues that the trial court's judgment is against the manifest weight of the evidence and constitutes an abuse of discretion. Generally, an appellate court will not reverse a civil judgment as being against the manifest weight of the evidence if there is competent, credible evidence going to all of the essential elements of the case. See Chemical Bank of New York v. Neman
(1990), 52 Ohio St.3d 204, 556 N.E.2d 490. We apply the same standard when reviewing an award of permanent custody under R.C. 2151.414. SeeJones v. Lucas Cty. Children Services Bd. (1988), 46 Ohio App.3d 85,546 N.E.2d 471; see, also, In re Wright (Oct. 4, 1990), Washington App. No. 90CA10, unreported.
Before granting permanent custody of a child to a children services agency, the juvenile court must make two findings under R.C 2151.414. First, the court must find that permanent custody is in the child's best interest. See R.C. 2151.414(B). Second, if the child is not abandoned or orphaned, the court must find that "the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents." See R.C. 2151.414(B)(1).
The court in Lewis, supra, found that the juvenile court could not grant a motion for permanent custody under R.C. 2151.414 until it had fully adjudicated the rights of both parents. The juvenile court did not have personal jurisdiction over the father in Lewis because the father had not been served with proper notice of the permanent custody proceedings. Thus, the Lewis court reversed the juvenile court's grant of permanent custody to the children services agency. However, the court also found that the juvenile court properly terminated the mother's parental rights because the mother had been served with notice.
In the case sub judice, the trial court made the required findings under R.C. 2151.414. The court found that permanent custody was in Austin's best interest, and that Austin could not be placed with either parent within a reasonable period of time. Regarding Austin's father, the court noted that the father had never been identified, and that no one had come forward claiming to be the father.
Appellant argues that there is no evidence in the record to support the trial court's determination that Austin's father is unknown. As was discussed under the First Assignment of Error, Austin's father was never served with notice of the permanent custody proceedings. In fact, LCDHS did not present any evidence regarding Austin's father during the hearing on the motion for permanent custody. Thus, Appellant argues that the trial court could not find that Austin could not be placed with either parent within a reasonable period of time. We agree.
Contrary to the Lewis court's analysis, we do not interpret R.C. 2151.414
to permit the piecemeal adjudication of parental rights in permanent custody proceedings. R.C. 2151.414 provides for the award of permanent custody of a child to a children services agency and the permanent termination of the rights of both parents. The statute specifically requires the juvenile court to find that "the child cannot be placed witheither of his parents within a reasonable time or should not be placed with his parents." (Emphasis added.) R.C. 2151.414(B)(1).
As was discussed under the First Assignment of Error, there is no indication in the record that there was ever any attempt to serve Austin's father with notice of the permanent custody proceedings. Indeed, Austin's father is not mentioned in any of the documents filed in the trial court, or in the transcripts of any of the hearings conducted by that court. In the absence of any evidence concerning the father, the trial court could not have found that Austin could not be placed with his father. Not only is such a finding unsupported by competent, credible evidence, it is not supported by any evidence at all. Thus, we have no alternative but to find that the trial court erred in finding that Austin could not be placed with either parent within a reasonable period of time.
We note LCDHS's arguments that Appellant has never identified Austin's father, and that the state cannot be expected to serve notice on a party whose identity is unknown. These arguments are not persuasive. If Appellant truly does not know the identity of Austin's father, LCDHS could easily have established this fact at the final hearing. Also, while the state cannot be expected to effect personal service on an unknown individual, R.C. 2151.29 specifically permits service by publication if other forms of service fail.
Appellant did not bear the burden of proving that she was entitled to custody of Austin. Rather, LCDHS bore the burden of proving that the requirements for awarding the agency permanent custody of Austin under R.C. 2151.414 had been met. The complete absence from the record of any reference to Austin's father is a glaring error on the part of LCDHS.
For the reasons stated above, Appellant's Second Assignment of Error is SUSTAINED. The judgment of the Lawrence County Court of Common Pleas, Probate-Juvenile Division, is REVERSED.
JUDGMENT REVERSED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED and Appellant recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Court of Common Pleas, Probate-Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of the entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J.: Concurs in Judgment and Opinion. Harsha, J.: Concurs with Concurring Opinion.
 ____________________________ David T. Evans, Judge